UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

FILED
2012 OCT 25 PM 2: 47
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
SYRACUSE

| | |
|---|---|
| In re:   Boerderij De Veldhoek, LLC,<br><br>             Debtor. | Case No. 12-31657<br>Chapter 12 |
| In re:   Herman Vander Vegt and<br>          Hendrina Vander Vegt,<br>                     Debtors. | Case No. 12-31656<br>Chapter 12 |

Appearances:

Peter A. Orville, Esq.
Peter A. Orville, P.C.
30 Riverside Drive
Binghamton, New York 13905

Joseph Zagraniczny, Esq.
Sara C. Temes, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202

Lynn Harper Wilson, Esq.
Office of the Chapter 12 Trustee
250 South Clinton Street, Suite 203
Syracuse, New York 13202

Attorneys for:

Boerderij De Veldhoek, LLC
Herman Vander Vegt and
Hendrina Vander Vegt

First Security Bank and Trust Company

Mark W. Swimelar, chapter 12 trustee

**Memorandum-Decision and Order Changing Venue to the Northern District of Iowa**

Before the court is a motion by secured creditor First Security Bank & Trust Co. ("First Security") to change the venue of these two chapter 12 cases to the Northern District of Iowa (Case No. 12-31656, Doc. No. 13; Case No. 12-31657, Doc. No. 12) ("Motion"). Alternatively, the Motion seeks modification of the automatic stay or dismissal to permit a pending Iowa state court foreclosure action to proceed and a New York foreclosure action to be commenced. At a

1

hearing, returnable on shortened notice[1] on October 16, 2012, the court announced its ruling to grant the change of venue. This memorandum-decision sets forth the court's findings of fact and conclusions of law upon which its decision is predicated.

*The Motion*[2]

The Motion is supported by the affidavit of Margaret J. Schurman, a vice-president in the agricultural commercial lending division of First Security, which is based in Charles City, Iowa. First Security sold and financed the debtor Boerderij De Veldhoek, LLC's ("LLC") purchase and operation of an approximate 75 acre dairy farm in Butler County, Iowa which the Debtors have operated since September, 2009. Prior to that time, Herman and Hendrina Vander Vegt ("Vander Vegts" or "individual Debtors") lived on and operated a dairy farm on 340 acres of land in Jefferson County, New York. That property is owned by the LLC and is the alleged foothold for claiming venue in the Northern District of New York for both the LLC, which claims it as its principal place of business, and the individual Debtors, who claim it as their residence.[3] At the hearing, Debtors' counsel represented that Debtors intend to develop the New York property, which is currently lying fallow, into a certified organic farm by cultivating it next spring. Counsel stated that in order for the farm to be certified by the United States Department of Agriculture it must lie fallow for three years. First Security, the Debtors' largest creditor, has a blanket first mortgage lien in all assets of the LLC, including the real and personal property in both Iowa and New York and is further secured by the individual Debtors' personal guaranty and

---

[1] Notice was shortened to 15 days from 21 days as agreed to by both counsel at a preliminary telephone conference held on September 28, 2012, the same day the Motion was filed and served electronically upon Debtors' counsel via the court's CM ECF filing system. The court favored shortening notice given that venue is a critical threshold issue.
[2] Since this court grants the request for a change of venue, only those facts pertinent to that relief are discussed herein.
[3] See page 1 of the respective Voluntary Petitions where both Debtors list "Jefferson" in response to "County of Residence or of the Principal Place of Business." Debtors have also checked "Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District" on page 2 of their Petitions.

2

that of Aver-Berkendijk Dairy Farms Inc. ("A-B Dairy Farms Inc.").[4]

The Motion is further supported by the affidavit of Rebecca Stone, a certified general appraiser with Farm Credit East, ACA who inspected the New York property on two separate occasions at the behest of First Security. On her first visit on June 11, 2012, 81 days prior to the bankruptcy filings, Ms. Stone observed that the buildings, including the house on the property, were not being used nor were there any ongoing farming operations. Packages of shingles were observed on the roof but no repair work had been undertaken. Debtor Hendrina Vander Vegt was present but would not allow Ms. Stone to enter the house stating that "it was uninhabitable and infested with bats and black mold." Affidavit of Rebecca Stone, sworn to on Oct. 13, 2012, ("Stone's Aff.") at ¶ 3. A log cabin was also on the property to which Ms. Stone was not allowed access.

Four months later, Ms. Stone made a second visit to the New York property. From her observations, Ms. Stone noted that the house had not been occupied for months, the packages of shingles remained on the roof, and there was water damage to the interior of the house. Ms. Stone inspected the log cabin and found it to be uninhabitable and in poor structural condition. No one appeared to be actively farming the property. Stone's Aff. at ¶¶ 5, 6. Attached to Ms. Stone's affidavit is a five-year lease commencing February 1, 2012 under which the LLC leases the "rear portion" of the property to a non-Debtor entity for $2,100 a year, including all buildings.

The LLC, owned and controlled by the Vander Vegts, was organized under the state law of Iowa, coincident with its acquisition of the Iowa farm. *See* LLC's Operating Agreement attached as Ex. 1 to the Motion ("Operating Agreement"). The Operating Agreement lists West

---

[4] A-B Dairy Farms Inc., which initially incorporated in New York, filed a chapter 12 petition in this court that was signed by Herman Vander Vegt, as President, on September 7, 2012, one week after the other related filings. It is not, however, the subject of the present motion.

3

Des Moines, Iowa as the LLC's principal place of business with its registered agent also located in West Des Moines. *Id.* The Agreement and all rights and liabilities of the members are governed by Iowa law. First Security commenced a foreclosure action relating to the Iowa farm in June, 2012. Thereafter, the LLC sued First Security in New York Supreme Court, Onondaga County, alleging fraud in connection with the its sale of the Iowa Farm to the LLC. The litigation was stayed by the Debtors filing for bankruptcy.

Debtors objected to the Motion via their counsel (Case No. 12-31656, Doc. No. 24; Case No. 12-31657, Doc. No. 26) ("Objection"). Debtors' counsel recites in his Objection that the LLC does business both in Jefferson County, NY and Butler County, Iowa. Objection at ¶ 4 ("[The LLC] runs a farm operation in Jefferson County, New York for the production of organic grains, and a dairy farm in Butler County, Iowa."). Counsel further recites that the Vander Vegts "maintain residency in Philadelphia, New York while also operating the dairy farm operation in Iowa." Objection at ¶ 5. Furthermore, although A-B Dairy Farms Inc. is not a respondent to the pending Motion, counsel further recites that the "Corporation primarily does business in Jefferson County, NY." *Id.* at ¶ 6.[5]

The bulk of the remaining paragraphs in the Objection address the lawsuit against First Security pending in New York Supreme Court. As part of the factual background to the New York litigation, the Objection refers to an attached exhibit which was represented as having been filed with the New York State Supreme Court.[6] The exhibit consists of an affidavit of Hendrina Vander Vegt, sworn to in July, 2012. Although the statements, if proven true, might provide a basis under New York law for Debtors to recover damages in their suit against First Security, for

---

[5] The records of the New York Department of State, Division of Corporations, reflect that this corporation is currently inactive, having been dissolved by proclamation on October 27, 2010.

[6] The exhibit was not attached as recited as part of Doc. 26 in the LLC's case; it was, however, attached to Doc. 24 in the Vander Vegts' case, albeit unsigned and unnotarized. Nevertheless, the court accepts counsel's representation that it was presented to the State court and, presumably, fully executed for purposes of this record.

4

purposes of the present Motion, only one statement is relevant. After addressing the closing on the purchase of the Iowa farm with First Security, Hendrina Vander Vegt states: "we relocated to the [Iowa] farm and immediately began to farm the same." Objection, Ex. 1 at ¶ 16. Counsel also argues in his Objection that the current Motion is premature as the Debtors' 341 meeting of creditors has not yet taken place.

On the return date of the hearing, Debtors' counsel argued against the Motion but presented no evidence. In response to the court's inquiry, counsel responded that the Vander Vegts were in Iowa.

### *Debtors' Filings with the Court*

As part of the record, the court takes judicial notice of the Debtors' sworn schedules and filings with the court. Both the LLC and the Vander Vegts list 44 creditors on their respective amended matrices filed with the court.[7] Of the LLC's creditors, 32 are located in Iowa, 11 are in the Midwestern states, and the final creditor is the Internal Revenue Service. Of the Vander Vegts' creditors, 29 are located in Iowa and 13 are in the Midwestern states.[8] None of the creditors are located in New York.

The LLC reflects *current* monthly income of $44,450 on its Schedule I, of which $7,000 is identified as from "NY Organic Soybean Harvest Monthly Average."[9] The balance of the income shown, $37,450 representing 84 percent of the total, is from Iowa operations, as is 80 percent of the ongoing expenses shown on Schedule J (Case No. 12-31657, Doc. No. 32). No income is shown for the outstanding lease to a non-debtor entity of the New York farm.

The LLC's personal property on Schedule B includes a nominal amount of cash, a

---

[7] Case No. 12-31656, Doc. No. 12; Case No. 12-31657, Doc. No. 10.
[8] The Vander Vegts' remaining 2 creditors are located in Georgia and Pennsylvania.
[9] Of note, at the October 16 hearing, counsel represented that the $7,000 in income was a "projected" monthly average to be derived from the New York property over the next year once the property is income producing.

$45,000 milk receivable, approximately 100 young stock and 120 mature cows, and a significant amount of farming equipment. Based upon the assets listed on Schedules A and B that may readily be identified as being located in Iowa, *i.e.*, the real property, cows and related milk receivable, 66.2% of the LLC's assets are located in Iowa. This percentage does not account for the several pieces of farming equipment, which likely are also located in Iowa.

The Vander Vegts derive their income, in turn, from the LLC.[10] Their individual assets are nominal.

*Legal Standard Governing Proper Venue*

In pertinent part, 28 U.S.C. § 1408, which governs venue of cases under title 11 of the United States Code, provides:

[A] case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.[11]

In light of the challenge raised to the Debtors' chosen venue, Debtors must establish that their domicile, residence, principal place of business or principal assets were located in the Northern District of New York for the 180 days immediately preceding the petition date, or for a longer portion of such 180-day period than in any other district. *See* 28 U.S.C. § 1408. Thus, the court's analysis of venue focuses on the 180-day look-back period from March 4 to August 31,

---

[10] The Vander Vegts' Schedule I reflects other monthly income of $457.26 identified as "Cell Tower Rental." Although counsel indicated at the hearing that the cell tower is located in New York, this New York-derived income represents only 13.2 percent of the Vander Vegts' total monthly income.
[11] Admittedly, at the time these cases were commenced there was no pending case under title 11 concerning an affiliate and, therefore, venue of these cases shall be assessed with respect to subparagraph (1) only.

6

2012. If this court finds that the Debtors' choice of venue was improper, then, the court must dismiss the case or transfer venue to a jurisdiction where venue is proper. *See Thompson v. Greenwood*, 507 F.3d 416, 420-422 (6th Cir. 2007).

A case under title 11 may be transferred to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Accordingly, even if venue of these cases was initially proper under 28 U.S.C. § 1408, it is within the court's discretion to transfer the cases to a different venue if deemed warranted under the above standard. *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008). Although the analysis is based "on the facts underlying each particular case[,] . . . the power to transfer a case . . . should be exercised cautiously." *Id.*, quoting *In re Enron Corp.*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004).

Under the interest of justice prong, a court considers whether:

> [1] transfer would promote the economic and efficient administration of the bankruptcy estate; [2] the interests of judicial economy would be served by the transfer; [3] the parties would be able to receive a fair trial in each of the possible venues; [4] either forum has an interest in having the controversy decided within its borders; [5] the enforceability of any judgment would be affected by the transfer; and [6] the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. at 671-72, citing *In re Enron*, 317 B.R. at 638-39. Courts also consider the learning curve that would be imposed upon the transferee court and the ability and degree of interested parties to participate in the proceedings and the costs associated with that participation. *Id.* at 672.

Under the convenience of the parties prong, a court considers six factors:

> [1] proximity of creditors of every kind to the court; [2] proximity of the debtor; [3] proximity of witnesses necessary to the administration of the estate; [4] location of the assets; [5] economic administration of the estate; and [6] necessity for ancillary administration if liquidation should result.

*Id.* at 672, citing *In re B.L. of Miami*, 294 B.R. 325, 329 (Bankr. D. Nev. 2003). Under this

analysis, the factor to be given the greatest weight is the "economic and efficient administration of the estate" *Id.* Less weight is to be afforded considerations of liquidation because "it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization." *Id.,* citing *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (Matter of Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1248 (5th Cir. 1979), et al.

*Discussion*

Other than the sworn statements of Debtors in their petitions, there is nothing in the record that supports a finding by this court that the Debtors' domicile, residence, principal place of business or principal assets were in Jefferson County for the 180-day look-back period nor the greater part of said period. On the contrary, the evidence establishes that the Debtors were not living on the property listed and that no New York farming operation was ongoing during that time. It may be that the Debtors intended in the future to pursue a farm operation for the production of organic soybeans but the record does not support that it was in existence at the critical time before the filing date.[12] Accordingly, the court concludes that at the time of filing, Butler County was the only appropriate venue for these cases.

Even had venue been appropriate in this District when the cases were filed, in the exercise of this court's discretion, a venue change to Butler County, Iowa is warranted in the interest of justice and for the convenience of the parties. The Debtors are located in Iowa and most, if not all, creditors are located closer to Iowa than New York. First Security, which holds the largest secured claim in these cases, is located in Iowa. Debtors' primary income-producing assets are located in Iowa. Although the LLC owns the New York farm, the farm remains

---

[12] Debtors counsel's statement, which is not evidence, that the Vander Vegts "maintain residency in Philadelphia, New York while also operating the dairy farm operation in Iowa" is, simply, preposterous as the work involved to run the dairy operation does not permit one to commute to a residence so far removed. A dairy farm requires the constant presence of its operators. The distance between Iowa and New York is significant enough to discredit any assertion that the Vander Vegts could reside in New York and work in Iowa.

8

fallow, and is not currently the site of Debtors' on-going farming operations. Iowa is the forum that has the primary interest in having the controversy related to the operation of the Iowa Farm decided in the Northern District of Iowa. Finally, if liquidation should result, the Debtors' assets are primarily located in Iowa.

Given the location of the parties, the majority of the Debtors' creditors, the majority of the Debtors' assets, and First Security's collateral, the change of venue will promote the economic and efficient administration of the bankruptcy estate. First Security's pending foreclosure action must be venued in Butler County and the interest of judicial economy will best be served by having the bankruptcy cases venued in Iowa. Although a debtor's choice of venue is entitled to great deference, weighing the factors, the court finds a change of venue to be appropriate in these cases.

*Conclusion*

For the foregoing reasons, this court grants First Security's motion to change venue and, accordingly, transfers these cases to the Northern District of Iowa.

So ordered.

Dated: October 25, 2012
Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge